This contract was certainly in a most imperfect state at the time of the death of Sebbe Sebben. It was not reduced to writing, nor signed by the parties, nor any . instructions given to reduce it to writing : no money was paid, to bind the contract; no possession was given by one party, or taken by the other; and no part execution of any kind took place. It was so incomplete that the locus penitentise was still left to either of the parties, and it could have been revoked by either of them. It was a mere imperfect parol agreement, and was not binding on either party, or the representatives of either. Neither could have enforced it against the other, or the representatives of either. The very text of Fonblanque shews how absolutely necessary it is that a contract should be perfect to be obligatory. He says, « The agreement ought also to be complete and perfect; for pacta cdntractuum preparatoria are not binding in law or in equity therefore going to counsel and giving the heads of the agreement is not obligatory, for the terms might have been afterwards altered, or entirely broken off. ’ So, too, “ the agreement must also be fixed and settled, and not wavering and revocable; or else the representative will not be bound by it, if not perfected before the party’s death.” The agreement must be made perfect in the life time of the parties, else it will not bind: for the lien never vesting in the ancestor or testator, cannot descend upon the heir or devolve to'the executor. Against this it is alleged, that although under the circumstances stated, neither party was bound by this parol contract, yet it was in their power to car* *218 ry it into effect if they pleased. And their representatives were equally free to complete the contract, however imperfectly left by the ancestor. That in fact the re-presCi!-tatives of Sebbe Sebben, one of the contracting parlies, having filed a bill to carry the contract into ex-ecu^onj an¿ thereby expressed their confirmation thereof; and Georg'e Gibbes, the other contracting party, having, in his answer, admitted the contract and consented to the execution of it, the Court cannot hesitate to give its aid to carry It into specific execution.
JLt may be here asked, if the representatives of one contracting party, who is dead, and the other contracting party, who is living, are agreed to give effect to the 'contract, why do they come to the Court to enforce a specific execution? The answer is, that the heirs of the party who "had agreed to sell, being'aliens, are incapablo to take this property by'iuheritañce,- consequently they cannot, upon the death of Sebbe Sebben, cdhvey a good "title to the defendant. The legál title devolved somewhere, on Sebbe Sebben’s death, but not on thoin : they were alien's, and could not take. It devolved then on the escheator. In what capacity then do these complainants sue ? They státe themselves to be heirs, and they sue as heirs. But the law of this country denies them tliis character. At the instáht of the death of Sebbe Sebben, without heirs capable of taking the estate, the rights of the state by escheat attached : and they cannot aslieirs niake good title to the land, nor carry this contract into execution. Nor would they have 'been entitled, as administrators, (if they had administered) to compel the execution of this contract; for their ‘Claim would still have been to sanction the contract, and 'authorise their conveyance of the land to George Gibbes and to compel the payment of the mone,y agreed to be paid for it. But they cannot convey a good title; and the Court will neither make good a defective title nor oblige George Gibbes to pay the money, as these claimants cannot make him a good title.
It was attempted to assimilate this case to that of a* *219 pwner of land devising it to another, both of them he-ing citizens capable of holding land; but the heir of the devisor bejng an alien; such de-vise is said to be good, though the devise cannot take effect till the testator’s death though it might have been argued that eo instan-ti, the escheat would attach, so that the devise could not. be supported.. Yet such devises are supported.. There-, fore it was argued that such, a.contract as this could be. supported and would be enforced.. It is enough to say that this case does not apply to the one under consideration. The devisor is authorized by law to devise,,, and. the devisee being a citizen is capable of taking; and, the will of the testator, though it does not take effect until the death of the testator, takes effect eo instan ti,.. and prevents the application.of the doctrine of escheat.. So, too, where a testator,, who. has no heirs, devises to a. person capable of taking, such devise will he effectual though if he had not made such devise, the land would have escheated for defect of heritable blood..
But these cases have no application-to the one under consideration. It was argued that if a legal heir of. Sebbe Sebben had appeared, and George Gibbes had filed a bill for the specific execution of this contract, it. would have been enforced. To this I answer, that if such an heir had chosen to admit the agreement, he could have done so; as he might have made a like agreement de novo with the other party. But he w.ould, have been at liberty to plead the statute ; and.if he had it would have protected him. This shews how imperfect and incomplete the contract was. I cannot consent to set up and enforce such a contract under such circumstances.
The escheator representing the state was made a dc-. fendant in this case, and he has pleaded the statute of frauds. But it is said he cannot, avail hims'elf of that statute, which was made to protect the immediate contracting parties and their heirs against parol agreements respecting lands, and not other persons, claiming in any other character than heirs. I do not perceive any such: *220 limitations in the statute of frauds. It certainly would Protec^ a residuary devisee, though a stranger, from any attempt, either by the heir or the executor, to set up a unexecuted, parol agreement, relative to part the real estate, which would otherwise pass to him im(|er the residuary clause ; and so, I apprehend, it will protect any person, claiming any legal title to the land, on the death of the former owner. The escheator comes in by law to the legal title, either as the ultimus hieres, and therefore taking by descent, in a kind of caducary succession, or by purchase ; for the law-writers are not perfectly agreed in which character he takes. See 2 Black. Com. 244. But he takes in one or the other character, for our law knows only of those two methods of taking real estate. Now either as purchaser, or as heir, he is, in my opinion, perfectly at liberty to avail himself of the statute of frauds to protect the estate from such a parol contract; and he having pleaded the statute, I think it is a complete bar in this case. This contract has not one feature of a perfect agreement, which can be carried into execution against the will of either party, or the legal representatives of either party. If Mr. George Gibbes had filed a bill for the specific execution of this contract, the escheator, as a necessary defendant and claimant, would have been at liberty to plead the statute $ the form of tile suit cannot make any difference.
This Court has narrowed the doctrine of specific execution of contracts within the scope of the statute of frauds. In the important case of Givens vs. Calder, decided in May, 1803, which was twice fully argued, the Court declared that great mischiefs and uncertainty had resulted from relaxing the operation of the statute, and professed a determination to he more cautious in future; especially in cases where one of the parties was dead, when the danger of frauds and perjuries was greatly increased. And the Court in that case refused to carry the agreement into effect under much stronger circumstances to shew a regular and formal contract than the present.
*221 I will not dwell on the dangers of fraud and perjury, ■which the statute meant to guard against: they are plain. Great evils must have existed or the statute would not have been passed. Where one of the parties is dead those dangers are increased. Heirs and others claiming by law might be totally defeated if the statute is refined away.
It is therefore ordered and decreed that the bill be dismissed. But as the complainants had certainly reasonable ground to come into this Court to enquire into their rights, and know why they are cut off from the inheritance of their relation, I do not think they ought to be made to pay costs : and as there is no blame on them, I am of opinion that they ought not to be made to pay the costs: and as the defendant, George Gibbes, could not prevent Ms being brought into Court, and there is no blame in him, I am of opinion that he ought not to pay any costs. Let the costs be paid out of the escheated property.
From this decree there was an appeal on the following grounds:
First — The escheator has no equity to entitle him to favor. 1. From the reason of escheat. 2. Because not even a volunteer. 3. Not favored in England, much less therefore here. 4. Not on a footing with the heir.
Second — Complainants have strong and various equitable grounds.
Third — The existence of the agreement, the terms, their fairness and equality are sufficiently proved by George Gibbes, a disinterested, if not an indifferent witness. The reason is also given why the contract remained unexecuted. As then between George Gibbes and complainants there is ground enough to warrant a specific performance; to rebut this equity the escheator must raise a still greater. The confession is amply sufficient, when we consider that the reason of the statute is not strictly applicable : that the absence of mutuality of consent is supplied by the relation of the parties *222 and the merits of their respective claims : that the face' of an agreement so fair and distinct implies consent: that the very change contemplated evidences an inten-£}on favorable to his relations ; and vice versa, from the fact of their inability to inherit, the existence of jnfeil¿ecj oxecution of such a plan is presumcable : that they are unquestionably entitled to more favor than the escheator, on the strongest grounds of equity, policy, and law. In fine, that we do not deprive a third person of an equitable right, nor charge him with an unequita-ble burthen: and surely a technical right, founded on the pre-supposed non-existence of every other, should never prevail over equity so various and substantial.
NoRthkof, appellants’ solicitor,.
The appeal came to a hearing, and Mr. Grimke argued in support of it.
Even in England escheats are not favored, and technical objections aroused in favor of other claimants : 10 Yincr. A devisee shall take in preference of the escheat- or, though devisor dies without legal heirs, capable of' inheriting. 2 Yesey, jun. 170, Walker vs. Denn; 3 P. Wms. 52, Williams vs. Lonsdale; 1 Fonbl. 7, note (w.} The contract preceded the right of escheat, and must be decided separately and previously. The question then is, is this such a contract as is obligatory on the parties, and will be enforced by this Court? The contract is proved, or rather confessed, and there must be evidence of fraud or perj ury to prevent its enforcement. Sob erts oh frauds, 124. Only the party to be charged is necessary to have signed, or to confess .by his answer. The time of the payment of one half not being fixed at any period is immaterial; the Court will fix a reasonable time. Examines the case of Givens and Caldcr, decided in this Court, and thinks it inapplicable.
JVPPefds> consisting of Chancellors jAMES> Thompson, Desaussure, and Gajeiard, una- *223 ■famously affirmed tlie decree of the Circuit Court, for 'the reasons given in the decree.
T. S. Grimke, for complainants,
sk Gadsden, for defendant, the escheator.